PJM

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Vaqar Ahmad Choudry | ) Case No.   1 3 - 2 1 9 5 **SKG** |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ September 6 and 12, 2013 _____ in the county of _____ Washington _____ in the

_____ District of _____ Maryland _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of oxycodone |
| 18 U.S.C. § ~~2242(b)~~ 2422(b) | Enticement of a minor to engage in sexual activity |

This criminal complaint is based on these facts:

See attached affidavit.

FILED _____ ENTERED
LODGED _____ RECEIVED

SEP 1 6 2013

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

☑ Continued on the attached sheet.

_____
Complainant's signature

TFO Barry D. Ball, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: 9/13/13

_____
Judge's signature

City and state: Baltimore
MD

Hon. Susan K. Gauvey
Printed name and title

PJω

13 - 2 1 9 5 SKG

## AFFIDAVIT OF BARRY D. BALL IN SUPPORT OF CRIMINAL COMPLAINT

### I.    AFFIANT AND EXPERTISE

1.    I, Corporal Barry D. Ball, am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2.    I am federally deputized Task Force Officer assigned to the United States Department of Justice, Drug Enforcement Administration (DEA). I have been so employed since September 2012. My current post of duty is Hagerstown, MD.

3.    Prior to joining the DEA, I was employed for 14 years as an officer of the Maryland Natural Resources Police.

4.    During my career as a law enforcement officer, I have received extensive training from the Maryland Natural Resources Police Academy, the United States Coast Guard, the Maryland Police Training Commission, and the DEA. I have received training in the areas of police procedures and investigations, patrol techniques, community policing, drug recognition and clandestine lab procedures, and the detection and prevention of sex crimes.

5.    I submit this affidavit in support of an application for a criminal complaint against the following individual:

a. **Vaqar Ahmad CHOUDRY**, Middle Eastern male, 5'6", 165, black hair, brown eyes. CHOUDRY resides at 11200 Little Fox Lane, Germantown, MD 20876. He owns and operates Hagerstown Dental Center, which is located at 301 East Antietam St., Hagerstown, MD 21740.



## II.    PROBABLE CAUSE

7.      The DEA began investigating CHOUDRY in May 2013. The investigation focused initially on complaints and allegations that CHOUDRY was unlawfully distributing pain medication for no medical purpose. More recently, however, the DEA learned through a confidential source (CS-1) that CHOUDRY was seeking to engage in sexual activity with a minor child. Upon making this discovery, the DEA arranged a meeting between CHOUDRY, CS-1, and a fictional minor child at a motel in Hagerstown, MD. In exchange for CS-1's assistance in arranging the meeting, CHOUDRY provided CS-1 with an illicit prescription for



oxycodone. As noted below, on September 12, 2013, the DEA arrested CHOUDRY when he arrived for his meeting with CS-1 and the fictional minor child.

8.      The DEA's investigation of CHOUDRY has incorporated various measures, including but not limited collection of reports from anonymous sources, pharmacists, and dentists; office visits by undercover officers and confidential sources; and the arrangement of a controlled meeting between CS-1 and CHOUDRY for the ostensible purpose of providing CHOUDRY with a minor child to have sex with, in exchange for which CHOUDRY provided CS-1 with illegal prescriptions for oxycodone. The information derived from these investigative measures is summarized more fully below. This information establishes probable cause to believe that CHOUDRY unlawfully distributed oxycodone, in violation of 21 U.S.C. § 841(a)(1); and that he unlawfully enticed a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).

## Initial Reports Regarding Drug Distribution by CHOUDRY

9.      On May 2, 2013, officers of the Washington County Narcotics Task Force received an anonymous complaint regarding CHOUDRY, who, as noted previously, owns and operates Hagerstown Dental Center. The complainant informed the officers that CHOUDRY "writes scrip[t]s for pain pills to certain patients who fill the scrip[t]s and bring the pills back to him. CHOUDRY then pays them [i.e,. the "patients"] for their services and uses some of the pills himself and sells some of them."

10.      During the week of May 20th, 2013, Brian Burke, an officer employed by the WCNTF, received reports regarding CHOUDRY from an attorney in the Hagerstown area. The attorney told Burke that he represented several individuals who had knowledge that CHOUDRY was prescribing pain medication without any medical justification.

11.     On May 22, 2013, I met with two pharmacists from separate CVS locations in the Hagerstown area. Both pharmacists expressed concern that CHOUDRY was writing an unusually high number of prescriptions for Percocet. The pharmacists stated that CHOUDRY writes more prescriptions for Percocet that most general practitioners (i.e., physicians), and certainly more than any other dentist in the area.

### Meetings Between CHOUDRY and Undercover Officers

12.     On May 22, 2013, an undercover WCNTF officer (UC-1) made an appointment with CHOUDRY for a dental consultation at Hagerstown Dental Center. UC-1 went to Hagerstown Dental Center the following day. Upon arriving at Hagerstown Dental Center, UC-1 told CHOUDRY's staff that his jaw was "making a clicking noise." One of CHOUDRY's technicians, and eventually CHOUDRY himself, asked UC-1 several questions regarding the clicking noise. CHOUDRY then told UC-1 that it was too late in the day for a complete exam. He nevertheless provided UC-1 with a prescription for 20 800mg units of Motrin (for "dental pain"), and he scheduled a follow-up appointment for May 30, 2013. UC-1 never told CHOUDRY that he was in any pain.

13.     As directed, UC-1 reported for his follow-up appointment on May 30, 2013. During this appointment, UC-1 received a dental cleaning. Technicians also took x-rays of his mouth. Following these procedures, CHOUDRY told UC-1 that he might have cavities, and that he (UC-1) should schedule third appointment. CHOUDRY then provided UC-1 with a prescription for 20 Percocet 10/325 mg tablets (for "dental pain"). UC-1 never told CHOUDRY that he was in any pain.

14.     On July 1, 2013, a second undercover WCNTF officer (UC-2) made an appointment with CHOUDRY. During this appointment, UC-2 stated that he was experiencing

4

neck pain, was having trouble sleeping, and was looking for a doctor to "help [him] out."

CHOUDRY informed UC-2 that he needed to see a doctor who specialized in pain medication.

CHOUDRY then examined UC-2's teeth and offered to clean them. UC-2 refused, after which

CHOUDRY provided UC-2 with a prescription for 800 mg Motrin (for "dental pain").

## Reports Regarding Child Sexual Abuse by CHOUDRY

15.     In June 2013, investigators received reports that CHOUDRY had made

inappropriate sexual advances toward two minor children while examining those children in his

office. The reports stated that CHOUDRY had exposed his genitals to one minor patient and had

attempted to "massage" another. To the best of my knowledge, local law enforcement did not

follow up on these reports.

## Discussions/Meetings Between CHOUDRY and CS-1 Regarding Abuse of Minor Children and Illicit Prescriptions

16.     On September 4, 2013, a confidential source (CS-1) informed investigators that

CHOUDRY had told him/her that he (CHOUDRY) would like to have sex with a prepubescent

girl. CHOUDRY requested that CS-1 find him a prepubescent girl with "no boobies and no

hair."

17.     CS-1 is known to WCNTF and has provided reliable information in the past. S/he

is receiving monetary compensation in exchange for her assistance with this investigation. CS-1

has seven children, two of whom are adult females. According to CS-1, those adult females are

currently having sex with CHOUDRY in exchange for money.

18.     On September 5, 2013, CS-1 met with CHOUDRY in the basement area of

Hagerstown Dental Clinic. During this meeting, CHOUDRY told CS-1 that he wanted to have

oral sex and intercourse with a minor female. CS-1 informed CHOUDRY that she could provide



him with a minor female. S/he further stated that the minor female lived in Pennsylvania. This statement, however, was untrue, as no such minor female exists.

19.     In response to this offer by CS-1, CHOUDRY stated that he would be willing to drive to the minor female's house, and that he would be willing to pay $250 to have sex with the minor female. CHOUDRY further stated that he would be willing to provide the minor female with prescriptions. CS-1 requested that CHOUDRY provide her with a prescription as a kind of down payment. CHOUDRY responded that he did not want to get into trouble, and he therefore instructed CS-1 to make an appointment at his clinic the following day. CHOUDRY explained that during this appointment, he would conduct a cursory oral examination of CS-1 and would provide CS-1 with a prescription for narcotics and antibiotics. CHOUDRY strongly suggested to CS-1 that s/he should arrange a meeting with the minor female for the following day (September 6).

20.     As directed, on September 6, 2013, CS-1 made an appointment at CHOUDRY's office. When CS-1 arrived for this appointment, a member of CHOUDRY's staff directed him/her to an examination room. A short time later, CHOUDRY entered the examination room and asked CS-1 to open his/her mouth. He then asked CS-1 which tooth was hurting, and CS-1 responded that s/he was not in any pain. CHOUDRY nevertheless told CS-1 that he would provide him/her with a prescription for 15 Percocet and an antibiotic. CS-1 responded that that s/he needed more than 15 Percocet because s/he intended to share them with the minor girl (i.e., the fictional minor girl that CHOUDRY was attempting to meet with). CHOUDRY acknowledged this remark, and he told CS-1 that he would bring another prescription with him that evening (to the proposed meeting with the minor girl). CHOUDRY cautioned, however,



that CS-1 could not fill the second prescription for a few days.   He then wrote CS-1 a prescription for 15 Percocet and an antibiotic.

21.      While meeting with CS-1 on September 6, 2013, CHOUDRY told CS-1 that he had a friend in Montgomery County who was also interested in minor girls.  He then suggested that perhaps CS-1 could provide the friend with a minor girl to have sex with in the near future.

22.      Later on September 6, 2013 (following his/her appointment with CHOUDRY in his office), CS-1 made a phone call to CHOUDRY, during which s/he stated that the minor girl that CHOUDRY was hoping to meet with would be unavailable until after the weekend of September 7-8.  CS-1 informed CHOUDRY that s/he had a picture of the minor girl, which s/he offered to send to CHOUDRY via email.  CHOUDRY responded that CS-1 should send the picture via MMS message to his cell phone, rather than by email.  Following this conversation, CS-1 supplied CHOUDRY, via MMS message, with a photograph of a minor female, which had been provided to CS-1 by a law enforcement officer.

23.      On September 9, 2013, CS-1 again met with CHOUDRY in his office.  During this meeting, CS-1 asked CHOUDRY whether he was still interested in meeting with (and having sex with) the minor girl.  CHOUDRY responded that he was interested, but that he was busy with "classes" and would not be available until Thursday or Friday.

24.      On Thursday, September 12, 2013, CS-1 contacted CHOUDRY at Hagerstown Dental Center.  S/he then met with CHOUDRY outside the basement door of CHOUDRY's office.  During this meeting, CS-1 told CHOUDRY that the minor female would be available to meet with CHOUDRY that night.  CHOUDRY agreed to meet with CS-1 and the minor female between 7:30 and 8:00 p.m. at a Motel 6 located at 11321 Massey Blvd. Hagerstown, MD, 21740.

25.     Later on September 12, 2013, CS-1 placed a telephone call to CHOUDRY.
During this telephone call, CS-1 directed CHOUDRY to meet her at Room 338 at the Motel 6.
Room 338 is located on the first floor of the motel.  It is part of a block of rooms that faces the
parking lot.

26.     At approximately 7:55 p.m. that evening, CHOUDRY arrived at the Motel 6,
driving a black Mercedes SUV bearing Maryland registration 924M262.  CHOUDRY parked the
black Mercedes in front of Room 338.  After parking his vehicle, CHOUDRY placed a call to
CS-1.  During this call, CHOUDRY stated that he was nervous.  He further stated that he had
brought some beer with him to the meeting.  He asked CS-1 to remain in the motel room with
him and the minor female, so that if the female minor reported an incident, CS-1 and
CHOUDRY could state that the minor female was lying.  CHOUDRY then asked CS-1 to step
outside the motel room, so that CHOUDRY could see him/her.  CS-1 opened the door, stepped
to the center of the doorway, and motioned for CHOUDRY to come in.  CHOUDRY exited his
vehicle, carrying a brown paper bag, and approached the door.  As CHOUDRY reached the
doorway, law enforcement officers, who were stationed in the room with CS-1, made their
presence known to CHOUDRY.  CHOUDRY panicked and attempted to return to his vehicle.
He was arrested by law enforcement officers at this time.

III.   **CONCLUSION**

92.     Based on the information set forth in this affidavit, I submit that there is probable
cause to believe that:

   a.  On or about September 6, 2013, CHOUDRY knowingly, intentionally and
       unlawfully distributed a quantity of a mixture or substance containing a
       detectable amount of oxycodone, in violation of 21 U.S.C. § 841.

8

b.  On or about September 9, 2013, using a facility or means of interstate

commerce, CHOUDRY knowingly persuaded, induced, and/or attempted to

persuade or induce, an individual who had not attained the age of 18 to engage

in sexual activity for which CHOUDRY could be charged with a criminal

offense, in violation of 18 U.S.C. § 2422(b).

Task Force Officer Barry D. Ball
Drug Enforcement Administration

Sworn to before me this 13 day of September, 2013 at 12:30 pm hours.

The Honorable Susan K. Gauvey
United States Magistrate Judge

9